**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GERALD ULIBARRI and BRENDA ATENCIO,
on behalf of themselves and a class
of similarly situated persons,

                Plaintiff,

v.                                No. 1:18-cv-00294-RB-SCY

ENERGEN RESOURCES CORPORATION,

                Defendant.

---

**JOINT MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS
SETTLEMENT, (2) PROVISIONALLY CERTIFYING OPT-OUT CLASS
SETTLEMENT, (3) APPROVING NOTICE TO CLASS MEMBERS,
(4) ESTABLISHING OPT-OUT AND OBJECTION PROCEDURES, AND
(5) SETTING A FINAL HEARING DATE TO CONSIDER FINAL APPROVAL
OF THE CLASS SETTLEMENT, ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS**

---

Plaintiffs Gerald Ulibarri and Brenda Atencio (collectively "Plaintiffs"), and Defendant

Energen Resources Corporation ("Energen"), respectfully request that the Court approve a class

settlement agreement on a preliminary basis, provisionally certify a proposed Class (as defined in

paragraph 10 below), and enter related procedural orders in anticipation of a final fairness hearing.

As grounds for this Joint Motion, Plaintiffs and Energen state as follows:

**BACKGROUND**

1.      Plaintiffs, the Class, and Energen own interests in oil and natural gas produced in

New Mexico.  Plaintiffs and the Class own royalty interests in this production, and Energen owns

working interests in this production.  Energen also operates some of the wells from which the oil

and natural gas is produced and sold.

2.      On March 29, 2018, Plaintiff Ulibarri sued Energen in the U.S. District Court for the District of New Mexico.  Plaintiff Ulibarri, on behalf of himself and a class of similarly situated royalty owners, assert various claims against Energen for alleged royalty underpayments and improper deduction of post-production costs on the sale of residue gas, natural gas liquids, and condensate from wells located in New Mexico.  Energen has denied those allegations.

3.      On October 7, 2019, Plaintiff Atencio sued Energen in the District Court for San Juan County, New Mexico, styled as *Atencio v. Energen Resources Corp.*, Case No. D-1116-CV-2019-01603.  Plaintiff Atencio, on behalf of herself and a class of similarly situated royalty owners, assert various claims against Energen for alleged royalty underpayments and improper deduction of post-production costs on the sale of residue gas, natural gas liquids, and condensate from wells operated by Third Parties ("Non-Op Wells") located in New Mexico.  Energen has denied those allegations.

4.      On January 2, 2020, Plaintiff Ulibarri filed a Third Amended Complaint, adding Plaintiff Atencio's claims to those of Plaintiff Ulibarri and seeking to certify two subclasses.

5.      Since filing this action, the Plaintiffs and Energen have exchanged extensive information, discovery, and data production relevant to Energen's payment of royalties since March 29, 2012.  Plaintiffs' attorneys ("Class Counsel") and Energen's attorneys have engaged experienced royalty accounting experts to assist them in reviewing the data, analyzing the relevant post-production costs and the New Mexico processor's tax allocated to royalty owners, and determining the amount of damages  at issue in the case.  Class Counsel and Energen's attorneys also have engaged in extensive discussions between counsel and their accounting experts to

2

evaluate the information and negotiate a full and final resolution of their dispute in order to avoid the cost, time, and uncertainty of continued litigation.

6.    Class Counsel and Energen's attorneys have participated in continuous settlement discussions in order to resolve the claims of the Plaintiffs and the Class.  The parties reached agreement on the basic terms of the settlement on November 24, 2019, subject to the negotiation of mutually agreeable settlement documents.  The parties have completed the negotiation and drafting of those documents, and present them to the Court along with this Motion.

7.    The parties have agreed upon a class settlement agreement (the "Settlement Agreement"), which is attached as Exhibit A.

8.    The Parties and their counsel now are requesting that this Court enter an Order preliminarily approving the Settlement Agreement, provisionally certifying a Fed. R. Civ. P. 23(b)(3) opt-out Settlement Class, approving the proposed form of notice to Class members, establishing a deadline for Class member opt-out requests, establishing an objection procedure and deadline, and setting a date for final hearing on the issues of class certification, the Settlement Agreement, an award of attorneys' fees and litigation expenses to Class Counsel, and a proposed incentive award to each of the named Plaintiffs.

9.    The Parties submit that, unless the Court's evaluation of the grounds and evidence discloses a basis to doubt the fairness of the proposed Settlement Agreement, then the Court may preliminarily approve the Settlement Agreement, provisionally certify the proposed Class, approve notice to Class members of the proposed settlement (including their rights to opt out or object), and set a date for a final fairness hearing.

## THE SETTLEMENT AGREEMENT

10.    The Settlement Agreement defines a Fed. R. Civ. P. 23(b)(3) class (the "Class") as

follows:

> all persons and entities to whom Energen paid royalties on natural gas produced by Energen from wells located in the state of New Mexico since March 29, 2012, pursuant to leases or overriding royalty agreements which contain a royalty provision which obligated Energen to pay royalties based on a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a percentage of the greater of "(i) the market value of the product sold or used in a condition acceptable for delivery to a transmission pipeline, or (ii) the gross proceeds received by Lessee upon arms-length sale of such as conditioned for delivery to a transmission pipeline" ("greater of market value or gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage of the gross proceeds without "deduction from the value of Lessor's royalty by reason of any required processing, cost of dehydration, compression, transportation, or other matter associated with marketing gas produced from the lands covered hereunder" ("gross proceeds without deduction of post-production costs royalty provision");

> and

> all persons and entities who received royalties since October 1, 2013, from an entity other than Energen ("Third Party Operator") on the sale of natural gas products produced and sold by the Third Party Operator from wells located in the State of New Mexico, pursuant to a lease in which Energen owned a portion or all of the lessee's interests, and which lease contains a royalty provision obligating the lessee to pay royalties based on either: (i) a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"); or (ii) a royalty provision which obligates the lessee to pay royalties based upon a specified percentage "of the gross proceeds each year,

4

payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision").

The Settlement Agreement divides the Class into two Subclasses (the "Subclasses") as follows:

Subclass 1:  Gerald Ulibarri, and all persons and entities to whom Energen paid royalties on natural gas produced by Energen from wells located in the state of New Mexico since March 29, 2012, pursuant to leases or overriding royalty agreements which contain a royalty provision which obligated Energen to pay royalties based on a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a percentage of the greater of "(i) the market value of the product sold or used in a condition acceptable for delivery to a transmission pipeline, or (ii) the gross proceeds received by Lessee upon arms-length sale of such as conditioned for delivery to a transmission pipeline" ("greater of market value or gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage of the gross proceeds without "deduction from the value of Lessor's royalty by reason of any required processing, cost of dehydration, compression, transportation, or other matter associated with marketing gas produced from the lands covered hereunder" ("gross proceeds without deduction of post-production costs royalty provision").

Subclass 2:  Brenda Atencio, and all persons and entities who received royalties since October 1, 2013, from an entity other than Energen ("Third-Party Operator") on the sale of natural gas products produced and sold by the Third-Party Operator from wells located in the State of New Mexico, pursuant to a lease in which Energen owned a portion or all of the lessee's interests, and which lease contains a royalty provision obligating the lessee to pay royalties based on either: (i) a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"); or (ii) a royalty provision which obligates the lessee to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision").

11.     For the purposes of the Settlement Agreement, each Plaintiff is deemed to be a member of the Class and one Plaintiff is a member of each Subclass.

12.     In order to resolve the Class' claims for past royalty underpayments, Energen has agreed to pay a gross settlement amount of $850,000 to the members of the Class, which would be paid into an interest-bearing escrow account within fourteen (14) days after the Court enters its Order granting preliminary approval of the Settlement Agreement (the "Settlement Amount"). Of the Settlement Amount, $40,000 will be reserved as a fund for claims asserted by unidentified Class members, as described in paragraph 14 below (the "Reserved Funds").

13.     In the event that one or more of the members of the Class elects to opt out of the Settlement Agreement, Energen is entitled to an opt-out credit against the $850,000 settlement amount, which is determined based on each opt-out member's proportionate share of the Class Settlement Amount. The settlement amount being paid by Energen is in settlement of royalty underpayment claims asserted by the members of Subclass 1 on natural gas production sold by Energen since March 29, 2012. The distribution to the Class members who do not opt out of the proposed Settlement Agreement will be made *pro rata*, based upon each Class member's proportionate share of disputed post-production cost deductions. A projected proportionate distribution of the Settlement Amount (the "Final Distribution Schedule") will be presented to the Court prior to the Final Fairness Hearing.

14.     With respect to any unidentified Class members, including but not limited to members of Subclass 2, the publication notice as described in paragraph 31 will instruct such members to submit a claim to Class Counsel if they believe they are Class members within sixty (60) days of the publication date. The parties will confer on all claims and, within twenty-one (21)

days, determine whether such claimant is a Class member.  If the parties determine that a claimant

is a Class member, such claimant will be entitled to a distribution from the Reserve Funds, not to

exceed ninety percent (90%) of the total amount of post-production costs deducted from royalties

paid by Energen (either directly or on its behalf) since October 1, 2013, not to exceed the total

amount of the Reserved Funds.

15.     Class Counsel will request an award of attorneys' fees and reimbursement of

expenses that have been or will be incurred by Class Counsel, and an incentive award to each of

the named Plaintiffs.  Plaintiff Ulibarri's incentive award shall be paid from the Subclass 1

Settlement Amount.  Plaintiff Atencio's incentive award shall be paid from the Subclass 2 Claims

Fund.  Energen takes no position on such requests, and is not responsible under the Settlement

Agreement for any award of attorneys' fees, expense reimbursements, or named Plaintiff incentive

awards.

16.     All Class members who do not elect to exclude themselves from the Class shall be

bound by the provisions of the Settlement Agreement.

17.     Upon the Court's final approval of the proposed Settlement Agreement, the claims

asserted in this lawsuit will be dismissed with prejudice.

18.     Until and unless approved by the Court and it becomes effective under its terms,

the Settlement Agreement shall not be deemed to waive, withdraw, resolve, or prejudice any

Party's position, claims, defenses, or any other matter related to this action.

### THE REQUIREMENTS FOR PROVISIONAL CERTIFICATION OF A FED. R. CIV. P. 23(b)(3) SETTLEMENT CLASS ARE SATISFIED

19.     As the United States Supreme Court stated in *Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 621-23 (1997), "all Federal Circuits recognize the utility of Rule 23(b)(3) settlement

classes" as a means to facilitate the settlement of complex class actions. In *Amchem*, the Supreme Court confirmed that certification of a class for settlement purposes is consistent with Fed. R. Civ. P. 23, provided that the district court determines that the class certification requirements set forth in Rule 23(a) and 23(b) are satisfied. *Id.* at 621. Thus, if a settlement class appears to be certifiable under Fed. R. Civ. P. 23(a) and (b)(3), it may be certified provisionally, for settlement purposes only, pending further scrutiny at the final approval hearing. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2005) ("MCL") (the court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)"); *see also Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 111 (E.D. Pa. 2005) (recognizing that a settlement class may be provisionally certified at the preliminary approval stage). Thus, this Court should provisionally determine whether this case satisfies the following requirements for certification of a Rule 23(b)(3) settlement class: (1) the class is so numerous that joinder of the class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the class representatives are typical of the claims of the class ("typicality"); (4) the class representatives will fairly and adequately protect the interests of the class ("adequacy of representation"); (5) the common questions of law or fact predominate over individual issues ("predominance"); and (6) a class action is superior to individual actions for resolving the claims of the class members ("superiority"). Fed. R. Civ. P. 23(a) and 23(b)(3). As demonstrated below, each of the requirements for certification of a Rule 23(b)(3) settlement class is satisfied.

20.    Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." In this case, there are approximately 900 members of the Settlement Class, a

number which is more than sufficient to satisfy the numerosity requirement. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (finding that a class of 177 members satisfied the numerosity requirement); *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574-75 (D. Minn. 1995) (where class consisted of 96 members, numerosity requirement was satisfied); *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (joinder impracticable based solely on the fact that the class had 120 members). The numerosity requirement is therefore satisfied.

21.    Rule 23(a)(2) requires questions of law or fact exist which are common to the class. The Tenth Circuit has recognized that "commonality requires only a single issue common to the class." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999); *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). However, this "common contention" must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In this case, the named Plaintiffs have identified a common contention that is capable of classwide resolution. The success of each Class member's claim depends on whether Energen engaged in a common course of conduct under which it deducted certain post-production costs in the calculation of royalties. Energen denies the named Plaintiffs' claims for breach of contract, and likewise denies that it improperly calculated their royalties, but its denial is not based on individualized issues that would undermine a common question capable of a common resolution. Accordingly, the determination of whether Energen improperly deducted certain post-production costs in calculating the Class members' royalties will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

*Stores*, 564 U.S. at 350.  Accordingly, common contentions exist as to all of the Class members' claims against Energen.

22.     Rule 23(a)(3) requires that "the claims of the representative parties are typical of the claims of the class."  Typicality is established if the claims of the plaintiff and the class arise from the same course of conduct and are based on the same legal theory.  *Clark v. State Farm Mutual Auto Ins. Co.*, 245 F.R.D. 478, 484 (D. Colo. 2007).  If there is a nexus between the named plaintiffs' claims and the common questions of fact or law that unite the class, the typicality requirement is satisfied.  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 385 (D. Colo. 1993).  Here, the Plaintiffs and the members of the Class claim to have been damaged by the same course of conduct, namely Energen's common practice of deducting certain post-production costs in the calculation and payment of royalties to the members of the Class.  Energen denies the named Plaintiffs' claims for breach of contract, and likewise denies that it improperly calculated their royalties, but its denial is not based on distinctions between the claims asserted by the named Plaintiffs and those asserted on behalf of the proposed Class.  The Plaintiffs' claims are based upon a common course of conduct by Energen, and the Plaintiffs' theories of liability are the same as those of the other Class members.  The typicality requirement is therefore satisfied.

23.     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation requirement focuses on two issues: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Neither the named Plaintiffs nor their counsel have any conflicts of interest

with the other members of the Class.  In addition, the named Plaintiffs and their counsel have continuously prosecuted this class action vigorously on behalf of all Class members, and will continue to do so in their requests for preliminary and final approval of the Settlement Agreement. Moreover, Class Counsel has very extensive experience successfully representing royalty owners in numerous other class action royalty underpayment cases against natural gas producers, and therefore is qualified to represent the Class in this case.  The adequacy of representation requirement is therefore satisfied.

24.     In order to certify a class under Rule 23(b)(3), the questions of law or fact which are common to the class members must predominate over any questions affecting only individual class members.  Plaintiffs must show that the "common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co. v. Broad & Cassell*, 773 F.3d 1076, 1087 (10th Cir. 2014) (internal citations omitted).  Here, the predominant issues are whether Energen was obligated to pay royalties to the members of the Class under the lease agreements at issue based upon the sale proceeds received by Energen on the sale of the residue gas and natural gas liquids to third-party purchasers, and if Energen breached its contractual obligations to the members of the Class, based upon Energen's consistent practice of deducting certain post-production costs from the sale proceeds in the calculation and payment of royalties to the Class members.  Energen has employed a common method of royalty accounting with respect to the royalties paid to the members of the Class, and the issue of whether Energen's royalty accounting methods constitute a breach of Energen's contractual obligations to the Class is the predominant issue in this litigation.  Energen denies the named Plaintiffs' claims for breach of contract, but its denial is not based on individualized issues

that would predominate over common questions of law and fact. There are no significant individual issues of fact or law which exist in this litigation. The common questions of fact and law for the Class members therefore predominate over any individual issues which might exist.

25. Rule 23(b)(3) also requires that a class action be the superior method of adjudicating the controversy. Rule 23(b)(3) identifies four factors pertinent to this issue:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

An evaluation of these four factors confirms that class adjudication is the superior method of resolving this controversy. First, there are no members of the Class who have expressed any interest in prosecuting a separate royalty underpayment lawsuit against Energen. Second, there have been no individual lawsuits filed by any of the Class members regarding the claims at issue, which weighs in favor of class action superiority. *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669 (N.D. Ohio 1992). Third, concentrating this litigation in this Court is desirable, because all of the natural gas production at issue occurred in this judicial district, and most of the Class members reside in this judicial district. Finally, because this is a request for settlement-only certification, the manageability factor should not be considered in determining whether the superiority requirement has been satisfied. *Amchem*, 521 U.S. at 620. For these reasons, Rule 23(b)(3)'s superiority requirement is satisfied.

## THE PROPOSED SETTLEMENT AGREEMENT IS FAIR,
## REASONABLE AND ADEQUATE

25.     With respect to approval of a Rule 23 class settlement, courts engage in a two-step

process to ensure the fairness of any class action settlement.  *Pliego*, 113 F.R.D. at 128.  This

Joint Motion pertains to the first step of this process, in which the Court makes a preliminary

determination regarding the fairness, reasonableness, and adequacy of the settlement terms.  *Id.*

The object of preliminary approval is for the Court "to determine whether notice of the proposed

settlement should be sent to the class, not to make a final determination of the settlement's

fairness.   Accordingly,  the  standard  that  governs  the  preliminary  approval  inquiry  is  less

demanding than the standard that applies at the final approval phase."  *Rhodes v. Olson Assocs.,*

*P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015).  A district court will ordinarily grant preliminary

approval where the proposed class settlement appears to be the product of serious, informed, non-

collusive  negotiations,  has  no  obvious  deficiencies,  does  not  improperly  grant  preferential

treatment to class representatives or segments of the class, and falls within the range of possible

approval.  *Pliego*, 313 F.R.D. at 128; *In re Motor Fuel Temperature Sales Practices Litig.*, 2011

WL 4431090, at *5 (D. Kan. Sept. 22, 2011).

26.     Under Fed. R. Civ. P. 23(e)(2), a class action settlement must be "fair, reasonable

and adequate."  The Tenth Circuit has instructed district courts to analyze the following factors

to determine whether this standard is met: (1) whether the proposed settlement was fairly and

honestly negotiated; (2) whether serious questions of law and fact exist, such that the ultimate

outcome of the litigation is in doubt; (3) whether the value of an immediate recovery outweighs

the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment

of the parties that the settlement is fair and reasonable.  *Rutter*, 314 F.3d at 1188.  An evaluation

of the above-referenced factors fully supports preliminary approval of the proposed Class Settlement. First, the settlement was fairly and honestly negotiated. Prior to reaching a settlement, the Parties engaged in extensive discovery, including an exhaustive analysis of Energen's royalty accounting data, natural gas sales invoices, plant statements, and midstream service contracts, the taking of numerous depositions, including the Rule 30(b)(6) deposition of Energen, and Plaintiffs' expert witnesses. The Parties also engaged in extensive negotiations before reaching agreement on the terms of a settlement for each of the two subclasses at issue. Second, serious questions of law and fact exist which place the ultimate outcome of this litigation in doubt, including whether, and to what extent, Energen (or an operator on its behalf) has taken improper post-production cost deductions in the calculation of royalties paid to the Class members. Energen denies that it breached its contracts with the Class members or has acted improperly, and would vigorously defend its rights if the case were litigated. Third, the value of an immediate recovery clearly outweighs the mere possibility of future relief after protracted and expensive litigation. The amount which Energen has agreed to pay the Class members to settle their claims constitutes a substantial percentage of the amount in controversy, and avoids the risk to the Class members that they might recover a substantially smaller amount at an uncertain date in the future. Finally, it is the judgment of the Parties and their counsel that the proposed Settlement Agreement is fair and reasonable. For these reasons, the Court should determine that the Settlement Agreement is fair, reasonable, and adequate, and should preliminarily approve the proposed Settlement Agreement.

**NOTICE TO THE CLASS AND PROCEDURE FOR CLASS MEMBER
CLAIMS, OPT-OUTS AND OBJECTIONS**

27.     The Parties have agreed on the form and content of the Notices to the Class members, attached as Exhibit B (the "Mailed Notice"), and Exhibit C (the "Publication Notice").

28.     The Mailed Notice advises the Class members of (a) the existence of this action; (b) the provisional certification of the Class pending final approval of the Settlement Agreement; (c) the amount that Energen has agreed to pay to resolve the past royalty underpayment claims of the Class; (d) the reservation of a portion of the Settlement Amount for unidentified Class members, how to submit a claim to obtain benefits from the Reserved Funds, and the deadline to submit such a claim; (e) Class Counsel's anticipated request for payment of attorneys' fees, litigation expense reimbursements, and for named Plaintiff incentive awards to be paid from the Settlement Amount; (f) the date, time, and place of the hearing to consider final approval of the proposed Settlement Agreement; (g) their right to object and be heard at the hearing to consider final approval of the Settlement Agreement; and (h) their right to opt out of the proposed Settlement Agreement and the deadline by which such opt-out right must be exercised.  The Court should therefore approve the form and content of the Mailed Notice.

29.     Class Counsel has agreed to be responsible for the mailing of the Exhibit B Mailed Notice to the members of the Settlement Class.  The Court should therefore order that Class Counsel send the Exhibit B Mailed Notice to all members of the Settlement Class whose addresses are available from Energen's accounting records within 7 days after the Court enters its Order granting preliminary approval of the Settlement Agreement.

30.     The Publication Notice advises unidentified Class members of (a) the existence of the action; (b) the provisional certification of the Class pending final approval of the Settlement

Agreement; (c) the monetary amount that Energen has agreed to pay to resolve the past royalty underpayment claims of the Class; (d) the reservation of a portion of the Settlement Amount for unidentified Class members, how to submit a claim to obtain benefits from the Reserved Funds, and the deadline to submit such a claim; (e) the date of the hearing to consider final approval of the proposed Settlement Agreement; (f) their right to object and be heard at the hearing to consider final approval of the Settlement Agreement; (g) their right to opt out of the proposed Settlement Agreement and the deadline by which such opt-out right must be exercised; and (h) how to obtain a copy of the Settlement Agreement, a long form Notice, and more information about the Settlement Agreement.   The Court should therefore approve the form and content of the Publication Notice.

31.     Class Counsel has agreed to be responsible for the publishing of the Exhibit C Publication Notice in *The Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico for one Wednesday, Saturday, and Sunday edition of each respective newspaper of each respective newspaper.   The Court should therefore order that Class Counsel publish the Exhibit C Publication Notice in *The Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico within fourteen (14) days after the Court enters its Order granting preliminary approval of the Settlement Agreement.

32.     The Parties request that the Court enter an Order that any Class member seeking to obtain benefits from the Reserved Funds must submit a claim to Class Counsel by a deadline which is sixty (60) days after the publication date on which Class Counsel publishes the Publication Notice in *The Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico.

The publication deadline for Class members to submit a claim for benefits from the Reserved Funds shall be reflected in both the Mailed and Publication Notices.

33.     The Parties request that the Court enter an Order that any Class member wishing to opt-out of the Settlement Agreement must send a written opt-out request to Class Counsel by a deadline which is sixty (60) days after the postmark date on which Class Counsel mails the Mailed Notice to the proposed Class members by first class United States mail.  The postmark deadline for Class members to mail their written opt-out requests to Class Counsel shall be reflected in both the Mailed and Publication Notices.

34.     The Parties request that the Court enter an Order that any Class member wishing to object to, or comment on, any aspect of the proposed Class Settlement must file their written objection with the Court by a deadline which is seventy (70) days after the postmark date on which Class Counsel mails the Mailed Notice to the proposed Class members by first class United States mail, and that any member wishing to be heard at the final fairness hearing must file a written Notice of Intent to Appear at the final fairness hearing by a deadline which is 7 days before the scheduled date of the final fairness hearing.

35.     The Parties will file their Joint Motion for Final Approval of the Settlement Agreement, and any papers in support, at least twenty-one (21) days prior to the scheduled date of the final fairness hearing.  Class Counsel will file their motion for an award of attorneys' fees, litigation expense reimbursements, and for an incentive award to each of the named plaintiffs, at least twenty-one (21) days prior to the final fairness hearing. The Parties will file their response to any Class member objections to the Settlement Agreement at least 7 days prior to the final fairness hearing.

36.    All costs and expenses associated with mailing the Notice to the Class members, and with the administration of the Settlement Agreement, shall be borne by Class Counsel, and reimbursed out of the Class Settlement Fund, as approved by the Court.

**PLAINTIFFS' POSITION ON LITIGATION EXPENSES AND ATTORNEYS' FEES**

37.    Plaintiffs assert that, if the Settlement Agreement is approved, Class Counsel should be paid from the Settlement Fund for (a) the actual out-of-pocket expenses incurred by Class Counsel, including expenses which Class Counsel will incur in in the further handling of this litigation and in the administration of the Class Settlement, and (b) attorneys' fees to Class Counsel.  Class Counsel estimates that the out-of-pocket expense reimbursement request will not exceed the sum of $140,000.00.  Class Counsel intends to request an award of attorneys' fees that does not exceed forty percent of the Class Settlement Fund..

38.    Plaintiffs and Class Counsel request that the Court consider Class Counsel's request for attorneys' fees and expense reimbursements, and Class Counsel's request for an incentive award to each of the named Plaintiffs, at the final fairness hearing.

39.    The Parties agree that the payment of any and all attorneys' fees and expenses that may be awarded to Class Counsel, as well as all expenses of administering the Settlement Agreement, are to be made from the Class Settlement Fund.  Energen believes that the monetary settlement and other consideration being offered to the Class are fair and reasonable.  Energen takes no position on Class Counsel's request for an award of attorneys' fees and expense reimbursements, or on the request for an incentive award to each of the named Plaintiffs.

**CONCLUSION**

For the foregoing reasons, the Court should enter its Order:

18

(1) preliminarily determining that the Settlement Agreement is fair, reasonable, and adequate, and granting the Parties' Joint Motion for Preliminary Approval of the Class Settlement;

(2) appointing the named Plaintiffs as the Class Representatives;

(3) appointing Plaintiffs' attorneys as Class Counsel for the Settlement Class;

(4) provisionally determining that the Settlement Class meets the requirements for certification of a Fed. R. Civ. P. 23(b)(3) class;

(5) approving the form and content of the Mailed Notice which is attached to this Joint Motion for Preliminary Approval as Exhibit B;

(6) directing that Class Counsel be responsible for mailing the Exhibit B Mailed Notice of Class Settlement to the members of the Class by first class U.S. Mail within 7 days after the Court enters its Order granting preliminary approval of the Class Settlement;

(7) approving the form and content of the Publication Notice which is attached to this Joint Motion for Preliminary Approval as Exhibit C;

(8) directing that Class Counsel be responsible for publishing the Exhibit C Publication Notice of Class Settlement in *The Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico for one Wednesday, Saturday, and Sunday edition of each respective newspaper, within 14 days after the Court enters its Order granting preliminary approval of the Class Settlement;

(9) establishing a deadline for any potential member of the Class to submit a claim to Class Counsel to obtain benefits from the Reserved Funds, which deadline will be 60 days after the publication date of Class Counsel's publishing of the Exhibit C Publication Notice;

(10) establishing a deadline for any member of the Class to mail a written election to Class Counsel to be excluded from the Class, which postmark deadline will be 60 days after the postmark date of Class Counsel's mailing of the <u>Exhibit B</u> Mailed Notice to the members of the Class;

(11) establishing a deadline for any member of the Settlement Class to submit objections or comments regarding the proposed Class Settlement, Class Counsel's request for attorneys' fees and expense reimbursements, or Class Counsel's request for named Plaintiff incentive awards, which deadline will be 70 days after the postmark date of Class Counsel's mailing of the <u>Exhibit B</u> Mailed Notice to the members of the Class;

(12) establishing a deadline for members of the Class to give written notice of intent to appear at the final fairness hearing, which deadline will be 7 days before the scheduled date of the final fairness hearing;

(13) establishing a deadline of the date which is 21 days before the final fairness hearing for the Parties' attorneys to file motions and memoranda in support of final approval of the Class Settlement, for Class Counsel's motion for award of attorneys' fees, expense reimbursements, and for an incentive award to each of the named Plaintiffs;

(14) establishing a deadline of 7 days before the date of the final fairness hearing for the Parties' attorneys to file responses, if any, to Class member objections or comments regarding the proposed Class Settlement, Class Counsel's request for attorneys' fees and expenses, or the request for named Plaintiff incentive awards;

(15) scheduling a final fairness hearing date to consider final approval of the proposed Class Settlement, Class Counsel's request for an award of attorneys' fees and expense reimbursements, and the request for named Plaintiff incentive awards; and

(16) staying all case management deadlines until further order of the Court.

Dated: January 8, 2020.                        Respectfully submitted,

_s/ George A. Barton_                          _s/ Bradford C. Berge_
George A. Barton                               Bradford C. Berge
Stacy Burrows                                  Holland & Hart LLP
Sharp Barton, LLP                              P.O. Box 2208
7227 Metcalf Ave. Suite 301                    Santa Fe, NM  87504-2208
Overland Park, KS 66204                        Phone:  (505) 954-7284
gab@georgebartonlaw.com                        bberge@hollandhart.com
stacy@georgebartonlaw.com

                                               Christopher A. Chrisman
**Attorneys for Plaintiff Gerald Ulibarri,**  Holland & Hart LLP
**Brenda Atencio, and the proposed Class**    555 Seventeenth Street, Suite 3200
                                               P.O. Box 8749
                                               Denver, CO  80201-8749
                                               Phone:  (303) 295-8000
                                               cachrisman@hollandhart.com

                                               **Attorneys for Defendant**
                                               **Energen Resources Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2020, I filed the foregoing electronically with the Clerk

of the Court using the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

George A. Barton
Stacy Burrows
Law Offices of George A. Barton, P.C.
7227 Metcalf Ave. Suite 301
Overland Park, KS 66204
gab@georgebartonlaw.com
stacy@georgebartonlaw.com

s/ *Bradford C. Berge*
Bradford C. Berge