**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GERALD ULIBARRI and BRENDA ATENCIO,
on behalf of themselves and a class
of similarly situated persons,

                Plaintiffs,

v.                                           No. 1:18-cv-00294-RB-SCY

ENERGEN RESOURCES CORPORATION,

                Defendant.

---

**JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

---

Plaintiffs Gerald Ulibarri ("Ulibarri") and Brenda Atencio ("Atencio") (collectively "Plaintiffs"), and Defendant Energen Resources Corporation ("Energen"), move for final approval of the parties' class settlement agreement. As grounds for this Joint Motion, the parties state as follows:

**INTRODUCTION**

1.     Plaintiffs, the Class, and Energen owned interests in oil and natural gas produced in New Mexico. Plaintiffs and the Class own royalty interests in this production, and Energen owned working interests in the production. Energen also operated some of the wells from which the oil and natural gas was produced and sold.

2.     On March 29, 2018, Plaintiff Ulibarri sued Energen in the U.S. District Court for the District of New Mexico. Plaintiff Ulibarri, on behalf of himself and a class of similarly situated royalty owners, asserted various claims against Energen for alleged royalty underpayments and improper deductions of post-production costs on the sale of residue gas,

natural gas liquids, and condensate from wells located in New Mexico.  *See generally* Second

Am. Class Action Compl. [Dkt. #74].  Energen has denied those allegations.

3.    On October 7, 2019, Plaintiff Atencio sued Energen in the District Court for San

Juan County, New Mexico, styled as *Atencio v. Energen Resources Corp.*, Case No. D-1116-

CV-2019-01603.  Plaintiff Atencio, on behalf of herself and a class of similarly situated royalty

owners, asserted various claims against Energen for alleged royalty underpayments and improper

deduction of post-production costs on the sale of residue gas, natural gas liquids, and condensate

from wells operated by Third Parties ("Non-Op Wells") located in New Mexico.  Energen has

denied those allegations.

4.    On January 2, 2020, Plaintiff Ulibarri filed a Third Amended Complaint, adding

Plaintiff Atencio's claims to those of Plaintiff Ulibarri and seeking to certify two subclasses.  *See*

Third Am. Class Action Compl. [Dkt. #128], at ¶¶ 1-2.

5.    The parties have reached a proposed settlement that fully resolves the royalty

underpayment claims of the proposed Settlement Class (the "Settlement Agreement").  *See*

Exhibit 1.  Pursuant to the terms of the Settlement Agreement, Energen has agreed to pay a gross

settlement amount of $850,000 to resolve the Settlement Class' claims for past royalty

underpayment (the "Settlement Amount").  *See id.* at ¶ 2.  Of the Settlement Amount, $40,000

has been reserved as a fund for claims asserted by unidentified Class members (the "Reserved

Funds").  *See id.* at ¶¶ 2, 5.  The terms of the Settlement Agreement bestow a substantial

economic benefit on the Settlement Class members.

6.    The Class is defined as:

  all persons and entities to whom Energen paid royalties on natural
  gas produced by Energen from wells located in the state of New

Mexico since March 29, 2012, pursuant to leases which contain a royalty provision which obligated Energen to pay royalties based on a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a percentage of the greater of "(i) the market value of the product sold or used in a condition acceptable for delivery to a transmission pipeline, or (ii) the gross proceeds received by Lessee upon arms-length sale of such as conditioned for delivery to a transmission pipeline" ("greater of market value or gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage of the gross proceeds without "deduction from the value of Lessor's royalty by reason of any required processing, cost of dehydration, compression, transportation, or other matter associated with marketing gas produced from the lands covered hereunder" ("gross proceeds without deduction of post-production costs royalty provision");

and

all persons and entities who received royalties since October 1, 2013, from an entity other than Energen ("Third Party Operator") on the sale of natural gas products produced and sold by the Third Party Operator from wells located in the State of New Mexico, pursuant to a lease in which Energen owned a portion or all of the lessee's interests, and which lease contains a royalty provision obligating the lessee to pay royalties based on either: (i) a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"); or (ii) a royalty provision which obligates the lessee to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision").

The Settlement Agreement divides the Class into two Subclasses (the "Subclasses") as follows:

Subclass 1:  Gerald Ulibarri, and all persons and entities to whom Energen paid royalties on natural gas produced by Energen from wells located in the state of New Mexico since March 29, 2012, pursuant to leases which contain a royalty provision which obligated

Energen to pay royalties based on a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a percentage of the greater of "(i) the market value of the product sold or used in a condition acceptable for delivery to a transmission pipeline, or (ii) the gross proceeds received by Lessee upon arms-length sale of such as conditioned for delivery to a transmission pipeline" ("greater of market value or gross proceeds royalty provision"), or a royalty provision which obligates Energen to pay royalties based upon a specified percentage of the gross proceeds without "deduction from the value of Lessor's royalty by reason of any required processing, cost of dehydration, compression, transportation, or other matter associated with marketing gas produced from the lands covered hereunder" ("gross proceeds without deduction of post-production costs royalty provision").

Subclass 2:    Brenda Atencio, and all persons and entities who received royalties since October 1, 2013, from an entity other than Energen ("Third Party Operator") on the sale of natural gas products produced and sold by the Third Party Operator from wells located in the State of New Mexico, pursuant to a lease in which Energen owned a portion or all of the lessee's interests, and which lease contains a royalty provision obligating the lessee to pay royalties based on either: (i) a specified percentage of "the proceeds of the gas, as such, for gas from wells where gas only is found," ("proceeds royalty provision"); or (ii) a royalty provision which obligates the lessee to pay royalties based upon a specified percentage "of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found" ("gross proceeds royalty provision").

*Id.* at ¶ 1.

7.    On February 28, 2020, the Court granted the parties' Joint Motion for preliminary approval of their Settlement Agreement, and provisionally certified a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).  *See* Order [Dkt. #139] at 9-12.  A copy of the Settlement Agreement was attached as Exhibit A to their Joint Motion.  *See* Joint Motion [Dkt. #129] at Exhibit A.  The

Court expressly found that, upon preliminary review, the Settlement Agreement was fair, adequate, and reasonable.  *See* Order [Dkt. #139] at ¶ 8.

8.      On March 9, 2020, Energen paid $850,000 into an escrow account maintained by Bank of Oklahoma Financial.  *See* Declaration of George A. Barton, attached as <u>Exhibit 2</u>, at ¶ 16.  These escrowed funds represent the total settlement amount identified in paragraph 2 of the Settlement Agreement.  *See* <u>Exhibit 1</u>, at ¶ 2.

9.      At the Court's instruction, Plaintiffs mailed notice of the Settlement Agreement to approximately 887 members of the defined Class on March 6, 2020.  *See* <u>Exhibit 2</u>, at ¶ 17.

10.      At the Court's instruction, Plaintiffs published notice of the Settlement Agreement in the *Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico in the Wednesday and Sunday editions of each respective newspaper beginning Wednesday March 11, 2020, and concluding on Sunday, April 5, 2020.  *See id.* at ¶ 18.  The published notice included directions for submission of a Reserved Fund claim.  *See* Joint Submission of Proposed Preliminary Approval Order and Notices [Dkt. #138], at Exhibit C.  The deadline to submit a claim to Class Counsel to obtain benefits from the Reserved Funds was June 4, 2020.  *See* Order [Dkt. #139], at 10.

11.      Twenty-six individuals and entities submitted a claim to obtain benefits from the Reserved Funds.  For each claimant, the parties reviewed each claim, requested additional information, including the applicable oil and gas lease and royalty statements, and reviewed the information provided to determine whether or not the underlying royalty instrument and claimant was included within the Class definition.  *See* <u>Exhibit 2</u>, at ¶ 19.  After review of each claim, the

parties have concluded that five of the Reserve Fund claimants meet the Subclass 2 definition. *See id*.

12.    The deadline for Class members to request exclusion from the Settlement Class was May 5, 2020 or June 4, 2020 depending on how the notice of the Class Settlement Agreement was received.  *See* Order [Dkt. #139] at 10-11.  No Class members requested exclusion from the Settlement Class.  *See* Exhibit 2, at ¶ 21.

13.    The deadline for Class members to submit objections to the proposed settlement was May 15, 2020 or June 15, 2020, depending on how the notice of the Class Settlement Agreement was received.  *See* Order [Dkt. #139] at 11.  The parties have not received any objections to the proposed Settlement Agreement and no objections have been filed with the Court.  *See* Exhibit 2, at ¶ 22.

14.    A copy of the Final Distribution Schedule allocating $375,250.34 to the Settlement Class members is attached as Exhibit 3.  Of this amount, $373,693.07 will be allocated to Subclass 1 Class members, and $1,557.27 will be allocated to Subclass 2 Class members.

15.    The allocated amounts identified on the Final Distribution Schedule were calculated as follows:

|  |  |
|---|---|
| Settlement Payment | $850,000 |
| Accrued Interest | $250.34 |
| **Subtotal** | **$850,250.34** |
|  |  |
| **Less** |  |
| Litigation Expenses | ($186,010) |
| Class Attorneys' Fees | ($265,990) |
| Incentive Awards | ($15,000) |

| **Subtotal** | | $383,250.34 |
|---|---|---|
| **Less** | Escrow Fee | ($3,000) |
| | Future Reserve Fund | ($5,000) |
| **Total Distribution** | | $375,250.34 |

16.      Pursuant to paragraph 2 of the parties' Settlement Agreement, $40,000 of the total Settlement Amount was set aside as a Reserved Fund for Subclass 2 Class members.  *See* <u>Exhibit 1</u>, at ¶ 2.  Based on the allocation of payments to Subclass 2 Class members, net of fees and costs, there is $16,531.81 remaining in the Reserved Fund.  *See* <u>Exhibit 2</u>, at ¶ 20.  In order to maximize the recovery of Class members, the $3,000 escrow fee and $5,000 future Reserve Fund were deducted solely from the $16,531.81 in the Reserved Fund.  *See id*.  As part of the calculations set forth in Paragraph 15 above, the remaining amount of $8,513.81 has been allocated to all of the Settlement Class members, in order to maximize their recovery of the Settlement.  *See id*.  The Parties have agreed to continue to separately reserve $5,000 from the Reserved Fund in the event a claimant with an interest in a Class lease comes forward to seek a Settlement payment (without waiver of the parties' right to argue that such claims are released and/or barred by the settlement agreement).  *See id.*

### THE SETTLEMENT CLASS MEETS THE CERTIFICATION REQUIREMENTS OF FED. R. CIV. P. 23(b)(3)

17.      The Settlement Class meets the certification requirements of Fed. R. Civ. P. 23(b)(3).

a.      <u>Numerosity</u>.  Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable."  Although some courts have held that numerosity may be

presumed at a certain number, the Tenth Circuit "has never adopted such a presumption." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Rather, the Tenth Circuit has held that there is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). "What matters is whether joinder would be impracticable, not whether the number of proposed class members would cross some threshold." *Gandy v. RWLS, LLC*, 2019 WL 1407214, at *5 (D.N.M. Mar. 28, 2019) (citation omitted).

Here, there are approximately 900 members of the Settlement Class, a number which is more than sufficient to satisfy the numerosity requirement, such that joinder would be impracticable. *See, e.g.*, *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (finding that a class of 177 members satisfied the numerosity requirement).

In addition, with respect to Subclass 2, Rule 23's numerosity requirement is satisfied because joinder would have been impracticable based upon the unique circumstances of the putative subclass. *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) ("[I]mpracticability is dependent not on any arbitrary limit but upon the circumstances surrounding the case."). The members of Subclass 2 were unknown to Energen because their interests arise from the sale of natural gas products produced and sold by third-party operators, not Energen. Accordingly, the purpose of the extensive Publication Notice was to provide notice to individuals who believed they met the definition of Subclass 2 to submit a claim. Five of the twenty-six claimants meet the Subclass 2 definition, and the process of identifying absent Subclass 2 members by Publication Notice was successful, as there would have been no other manner to ascertain those Class members.

b.    <u>Commonality</u>.  Rule 23(a)(2) requires questions of law or fact exist which are common to the class.  "[C]ommonality requires only a single issue common to the class." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999) (citation and internal quotation omitted); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).  Here, the success of each Class members' claim depends on whether Energen engaged in a common course of conduct under which it deducted certain post-production costs in the calculation of royalties.  Energen denies that it improperly calculated the Class members' royalties, but its denial is not based on individualized issues that undermine a common question capable of resolution.  Thus, the determination of whether Energen improperly deducted certain post-production costs in calculating the Class members' royalties will "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Accordingly, the commonality requirement is satisfied.

c.    <u>Typicality</u>.  Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality is established if the claims of the plaintiff and the class arise from the same course of conduct and are based on the same legal theory.  *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1223 (D.N.M. 2012).  Here, each Class member claims to have been damaged by the same course of conduct, namely Energen's common practice of deducting certain post-production costs in the calculation and payment of royalties to the members of the Class.  Energen denies that it improperly calculated their royalties, but its denial is not based on distinctions between the claims asserted by the named Plaintiffs and those asserted on behalf of the proposed Class.  The Plaintiffs' claims are based upon a common course of conduct by Energen, and the Plaintiffs'

theories of liability are the same as those of the other Class members.  The typicality requirement is therefore satisfied.

        d.    <u>Adequate Representation</u>.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation requirement focuses on two issues: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Neither the named plaintiffs nor their counsel have any conflicts of interest with the other members of the Class.  In addition, the named Plaintiffs and their counsel have continuously prosecuted this class action vigorously on behalf of all of the Class members.  Moreover, Class Counsel has very extensive experience successfully representing royalty owners in numerous other class action royalty underpayment cases against natural gas producers.  The adequacy of representation requirement is therefore satisfied.

        e.    <u>Predominance</u>.  Rule 23(b)(3) requires that the questions of law or fact which are common to the class members must predominate over any questions affecting only individual class members.  Here, the predominant issues are whether Energen was obligated to pay royalties to the members of the Class under the lease agreements at issue based upon the sale proceeds received by Energen on the sale of the residue gas and natural gas liquids to third-party purchasers, and if Energen breached its contractual obligations to the members of the Class, based upon Energen's consistent practice of deducting certain post-production costs from the sale proceeds in the calculation and payment of royalties to the Class members.  Energen has

employed a common method of royalty accounting with respect to the royalties paid to the members of the Class, and the issue of whether Energen's royalty accounting methods constitute a breach of Energen's contractual obligations to the Class is the predominant issue in this litigation.  Energen denies these claims, but its denial is not based on individualized issues that would predominate over common questions of law and fact.  The common questions of law and fact for the Class members therefore predominate over any individual issues which might exist. The predominance requirement is therefore satisfied.

f.    Superiority.  Rule 23(b)(3) also requires that a class action be the superior method of adjudicating the controversy.  Here, there are no Class members who have expressed any interest in prosecuting a separate royalty underpayment lawsuit against Energen. Additionally, there have been no individual lawsuits filed by any of the Class members regarding the claims at issue, which weighs in favor of class action superiority.  *See In re Revco Sec. Litig.*, 142 F.R.D. 659, 669 (N.D. Ohio 1992).  Further, concentrating this litigation in this Court is desirable, because all of the natural gas production at issue occurred in this judicial district, and most of the Class members reside in this judicial district.  Finally, because this is a request for settlement-only certification, the manageability factor should not be considered in determining whether the superiority requirement has been satisfied.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Accordingly, the superiority requirement is satisfied.

### THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

18.    The proposed Class Settlement is fair, reasonable, and adequate and should be finally approved.

19.     With respect to members in Subclass 1, Energen's settlement payment represents at least 80% of the total amount of costs that Plaintiffs challenged as improperly deducted.  *See* Exhibit 2, at ¶¶ 12, 14.

Energen denies that it underpaid royalties to members of Subclass 1.  Energen believes that it calculated royalties to members of Subclass 1 consistent with their leases, which require royalties to be paid on "the proceeds from the sale of the gas, as such."  *See* Third. Am. Class Action Compl. [Dkt. #128], at ¶ 22, Exhibits 1-2 (quoting relevant lease language).  Energen believes that such language entitled members of Subclass 1 to royalties paid on 100% of the revenues received by Energen from its downstream sales of processed natural gas and natural gas liquids ("NGLs"), less the costs Energen incurred to achieve those revenues.  Energen further believes that it was only required to pay royalties on proceeds received from the sale of gas.  Energen therefore was not required to pay royalties on gas and NGLs that were not sold by Energen, because they were retained by the company gathering and processing the gas.

20.     With respect to members in Subclass 2, Energen's settlement payment represents at least 80% of the total amount of costs that Plaintiffs challenged as improperly deducted.  *See* Exhibit 1, at ¶ 5(b); *see also* Exhibit 2, at ¶¶ 12, 14.

21.     The Class members' release of claims is limited to the calculation of royalties paid by Energen from March 26, 2012 and through January 3, 2020.  *See* Exhibit 1, at ¶ 8.

22.     Class Counsel mailed notice of the proposed settlement to 887 Class members on March 6, 2020.  *See* Exhibit 2, at ¶ 17.  To date, no Class member has contacted Class Counsel with any concerns or negative reactions to the Settlement Agreement.  *See id.* at ¶ 22.

23.     After publishing notice of the proposed settlement in the *Albuquerque Journal* and the *Daily Times* of Farmington, New Mexico, twenty-six claim forms were received in order to obtain benefits from the Reserved Funds.  After careful consideration of each claim, the parties determined that five of the claimants meet the Subclass 2 definition.  *See id.* at ¶ 19.  Three claim forms were submitted by royalty owners who already were identified as members of Subclass 1, or successors-in-interest of Subclass 1 Class members.  Accordingly, these three claimants are set to receive settlement payments as part of the distribution to Subclass 1 owners, although they will not receive additional settlement payments under Subclass 2.  *See id.*

24.     Fed. R. Civ. P. 23(e) requires the Court's approval of a class-wide settlement agreement to ensure that it is fair, reasonable, and adequate.  *See* F.R.C.P. 23(e)(2).  Among the numerous factors that govern the Court's inquiry are (1) whether the proposed settlement was fairly and honestly negotiated; (2) if serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; (4) whether the settlement treats class members equally relative to each other; and (5) the parties' judgment that the settlement is fair and reasonable.  *See id.*; *see also Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  If the negotiated class settlement appears fair, reasonable, and adequate, it should be approved, in accordance with the "overriding Public interest[] in settling class action litigation."  *Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3rd Cir. 2010)) (internal quotations omitted) (approving settlement as fair, reasonable, and adequate); *see also* 4 NEWBERG ON CLASS ACTIONS § 13:44 (5th ed.) ("The law favors settlement, particularly in class actions and other

complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.") (citations omitted).

        a.    <u>Fair and Honest Negotiations</u>.  Negotiations are fair and honest when conducted at an arm's length by experienced counsel.  *See Robles v. Brake Masters Sys., Inc.*, 2011 WL 9717448, at *18 (D.N.M. Jan. 31, 2011) (concluding "that the settlement was negotiated at arm's length by experienced counsel concerning bona fide disputes").  Whether the parties "have vigorously advocated their respective positions throughout the pendency of the case" also weighs in favor of this factor.  *Lane*, 862 F. Supp. 2d at 1245-46 (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)) (internal quotations omitted) (approving settlement where "litigation has been ongoing for five years and has been vigorously litigated"); *see also Lowery v. City of Albuquerque*, 2013 WL 1010384, at *36 (D.N.M. Feb. 27, 2013) (approving settlement where "[c]ounsel for both parties met on multiple occasions to discuss the evidence and proof of the claims, the planned procedure for trial, and likely outcomes of trial") (citation and internal quotations omitted).

        Here, Class Counsel has extensive experience prosecuting royalty underpayment cases in New Mexico and elsewhere.  *See* <u>Exhibit 2</u>, at ¶¶ 4-8.  Class Counsel has litigated, and successfully resolved a number of other significant royalty underpayment cases on behalf of royalty owners.  *See id*.  This experience has been of great assistance to Plaintiffs in fairly and honestly negotiating resolution of this litigation with Energen's counsel.  *See id.*  Class Counsel believes the Settlement Agreement represented a very good outcome that is fair, adequate, and reasonable for the Class members on the claims at issue.  *See id.* at ¶¶ 14-15.  Ulibarri, the Class

Representative, also believes the Settlement Agreement is fair and reasonable. *See* Declaration of Gerald Ulibarri, attached as Exhibit 4, at ¶ 8.

Before the Settlement was reached, the Parties engaged in extensive discovery. Energen produced more than fifty-thousand pages of documents, including oil and gas leases, accounting data, natural gas sales invoices, plant statements, and midstream service contracts. *See* Exhibit 2 at ¶ 12; *see also* Joint Motion for Order to Preliminarily Approve Settlement [Dkt. #129], at ¶ 5. Plaintiffs hired an experienced royalty accounting expert to review this data and calculate the Class members' damages. *See* Exhibit 2, at ¶ 12. Plaintiffs' expert performed months of analysis, and shared this analysis with Energen to confirm accuracy. *See id.* The Parties, with the help of Plaintiffs' expert, spoke extensively to negotiate a methodology for determining damages and appropriate settlement terms. *See id.* at ¶ 11. There has been no assertion of collusion or improper pressure. *See id.*

The Settlement Agreement was therefore negotiated fairly and honestly.

b.    Serious Questions of Law and Fact. This factor requires the Court to determine whether there are "serious questions of law and fact which put the outcome of the litigation in doubt." *Lane*, 862 F. Supp. 2d at 1248 (approving settlement where plaintiff's ability to prevail on the merits was "questionable"). The existence of such doubt weighs in favor of settlement. *See Lowery*, 2013 WL 1010384, at *37 (approving settlement where outcome of lawsuit was in doubt); *Robles*, 2011 WL 9717448, at *18 (same). Courts analyzing this factor should consider that uncertainty is inherent in taking a case through jury trial, as "there are no assurances as to a jury's resolution." *Casados v. Safeco Ins. Co. of Am.*, 2015 WL 11089527, at *9 (D.N.M. Nov. 6, 2015) (citing *Wilkerson*, 171 F.R.D. at 285).

Serious questions of law placed the ultimate outcome of this litigation in doubt. The royalty underpayment issues presented in this litigation are extremely complex. *See* Exhibit 2, at ¶¶ 9-11. Plaintiffs' Class includes approximately 900 royalty owners covering two Subclasses. *See id.* at ¶ 13; *see also* Exhibit 1, at ¶ 1.

Plaintiffs retained an experienced royalty accounting expert to perform the necessary analysis for the Class. *See* Exhibit 2 at ¶ 12. This expert conducted an exhaustive analysis of Energen's royalty accounting data to understand the royalty payments made by Energen and the extent to which those payments were subject to challenges by the Class. *See id.*

Although Plaintiffs and their counsel believe they have a strong case based on their expert's analysis, a favorable judgment would be far from certain because of the serious questions of law and fact at issue. *See id.* at ¶ 9. Ultimately the outcome of a trial would be predicated on a court's or jury's assessment of the royalty language, deduction provisions in the royalty instruments, and the competing experts' testimony over complex issues of royalty accounting. This inevitably would depend on the court's or jury's assessment of the credibility of each side's expert witness testimony regarding the subject matter, and resolution of other risk factors. Thus, the Class would have faced a risk of a judgment in favor of Energen on the issue of liability. *See id.*

Plaintiffs and the Class also would have faced a serious question regarding the amount of the alleged damages to which the Class members would be entitled. Ultimately, if the case were tried, there would have been two vastly different viewpoints presented concerning the measure of the Class members' alleged damages. *See id.* As with the issue of liability, each side would have presented expert witness testimony concerning the proper calculation of any

damages to which the Class members might be entitled. *See id.* Although Plaintiffs and their counsel are confident that they would have presented a persuasive damage calculation for all Class members, the amount of damages to which the Class members are entitled would be contested, and there was considerable uncertainty regarding the amount of damages that a jury may have awarded to the Class. *See id.*

If the parties had not been able to negotiate a fair and reasonable Settlement Agreement, then the Class members would have been required to undertake protracted litigation, which Class Counsel believes presents a serious risk and uncertainty as to ultimately recovering on their royalty underpayment claims. For instance, in four class actions which Class Counsel has handled in the last five years, the defendant natural gas producers filed for protection under Chapter 11 of the Bankruptcy Code. *See id.* at ¶ 10. In the two bankruptcy cases which reached near completion, the oil and gas producer was permitted, under the Bankruptcy Code, to extinguish its prepetition royalty underpayment debt, precluding the class members in each of those cases from obtaining any recovery on their pre-petition royalty underpayment claims. *See id.* On February 1, 2017, during the pendency of a class action litigation for royalty underpayments, Vanguard Natural Resources, LLC, a publicly traded limited liability company, and its subsidiaries, filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. *See id.* at ¶ 10(b). Because Vanguard Natural Resources, LLC filed for protection under Chapter 11 of the Bankruptcy Code, the putative class of royalty owners were precluded from prosecuting their class action claims against Vanguard Permian, LLC, and were unable to recover any damages related to their royalty underpayment claims. *See id.* Similarly, in a class action royalty underpayment case where Class Counsel were litigating royalty underpayment

17

claims against August Energy Partners, LLC in this Court, and had received an order granting plaintiffs' motion for class certification, the natural gas producer filed for protection under Chapter 11 of the Bankruptcy Code.  *See id.* at ¶ 10(a).  On March 16, 2018, only a few months before the trial on the certified class claims was to begin, Augustus Energy Partners, LLC, a privately-owned natural gas exploration, development and production company with assets in Yuma County, Colorado, filed for protection under the Bankruptcy Code.  *See id*.  Through its bankruptcy, Augustus Energy Partners, LLC was permitted to discharge the class members' pre-petition claims for royalty underpayments.  *See id.*  Additionally, for class certification purposes, this case was consolidated with a separate action against Energen's assignee, Southland Royalty Company LLC, who filed for protection under Chapter 11 of the Bankruptcy Code shortly after the class certification hearing but before the court ruled on the motion for class certification.  *See id.* at ¶ 10(c); *see also Gerald Ulibarri and White River Royalties, LLC v. Southland Royalty Company LLC*, Case No. 1:16-cv-00215-RB-JHR, [Dkt. #192].  After Southland filed its suggestion of bankruptcy, the court denied as moot the pending motion for class certification in light of the automatic stay imposed by the Bankruptcy Code.  *See* Exhibit 2, at ¶ 10(c).

Thus, from Class Counsel's perspective, the significant litigation risk faced by the Class members in this case further supports the parties' request for final approval of the Settlement Agreement.  The foregoing analysis is from Class Counsel's perspective only.  There has been no allegation or representation that Energen is financially unsound, and Energen maintains that it is financially sound.

Thus, these serious questions of law and fact, the potential risk, and the extent to which these risks placed the ultimate outcome of the litigation in doubt, further confirm the reasonableness of the Settlement Agreement.

        c.    <u>Value of Immediate Recovery</u>.  Settlement is favorable under this factor when it enables a favorable outcome for a class and where "substantial judicial resources can be conserved by avoiding formal litigation."  *Lane*, 862 F. Supp. 2d at 1248 (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)) (internal quotations omitted) (approving settlement where litigation had been pending for five years and further pursuit of litigation would require significant judicial and party resources); *see also Lowery*, 2013 WL 1010384, at *38 (value of immediate recovery outweighed possibility of future relief, "especially accounting for the uncertainties of a jury trial").

Here, the Class derived noticeable value from immediate recovery.  Through the Settlement Agreement, Energen has agreed to pay 80% of the total amount of challenged deductions.  *See* <u>Exhibit 2</u>, ¶ 14.  The settlement thereby facilitates recovery for most of the Class members' claims while avoiding time- and resource-consuming litigation.

The likely duration of the litigation in the absence of the settlement would certainly be several more years.  Although this case has been litigated for over two years, no hearing on class certification of a litigation class occurred and no trial date was set.  If a settlement had not been reached, a trial on the merits likely would not have taken place until sometime in 2021.  In addition, if the Class prevailed in a trial on the merits, Energen likely would have appealed from an adverse judgment.  *See id.* at ¶ 9.

The experience of Plaintiffs' counsel confirms that royalty underpayment cases of this nature can take many years to resolve, particularly when such cases are actually tried to a conclusion. *See id.* at ¶¶ 4-8. Accordingly, the value of the immediate recovery factor further demonstrates the reasonableness of the Settlement Agreement.

        d.    <u>Treatment of Class Members Relative to Each Other</u>. This factor weighs in favor of settlement when the proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). A settlement is generally considered fair, reasonable, and adequate where "similarly situated class members are treated similarly and … dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.).

        Here, the Settlement Agreement compensates the Class members equally relative to each other. Specifically, with respect to owners in Subclass 1, the Settlement Amount represents 80% of the total amount of costs that Subclass 1 members challenged as improperly deducted. Similarly, with respect to owners in Subclass 2, the Settlement Amount represents 80% of the total amount of costs that Subclass 2 members challenged as improperly deducted. *See* <u>Exhibit 1</u>, at ¶ 5; <u>Exhibit 2</u>, at ¶ 14. Accordingly, the Settlement Agreement treats the Class members equitably relative to each other.

        e.    <u>Parties' Judgment that the Settlement is Fair and Reasonable</u>. When reviewing this factor, "[c]ounsel's judgment as to the fairness of the agreement is entitled to considerable weight." *Lane*, 862 F. Supp. 2d at 1249 (quoting *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)) (internal quotations omitted) (approving settlement negotiated by experienced counsel); *Lowery*, 2013 WL 1010384, at *39 (same); *Robles*, 2011

WL 9717448, at *19 (approving settlement which, "in counsel's extensive experience … is fair, just and adequate to settle" the class's claims).  As set forth fully in Paragraph 24(a) above, Plaintiffs' counsel is experienced in prosecuting royalty underpayment claims in New Mexico and elsewhere and views the fairness of this settlement against that experience.  *See* Exhibit 2, at ¶¶ 4-8, 14-15.  Plaintiffs' counsel believes the Settlement Agreement represents a fair and reasonable outcome for Class members on the claims at issue.  *See id.* at ¶¶ 14-15.  Ulibarri, the Class Representative, also believes the Settlement Agreement is fair and reasonable.  *See* Exhibit 4, at ¶ 8.

        f.    <u>The Class Itself Believes that the Settlement Is Fair and Reasonable</u>.  To date, no Class member has contacted Class Counsel with any concerns or negative reactions to the Settlement Agreement.  *See* Exhibit 2, at ¶ 22.  The deadline for Class members to object was May 15, 2020 for those Class members that received written notice, or June 15, 2020 for those Class members who submitted a claim for distribution from the Reserved Funds after viewing the Publication Notice.  Plaintiffs' counsel has not received any objections to the fairness of the Class Settlement from the approximately 900 members of the Settlement Class.  *See id*.  The lack of any objectors to a class settlement is another factor that weighs heavily in favor of approval of the Class Settlement.  *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 762 (10th Cir. 2020) (affirming reasonableness of settlement where "of 607 class members, only the four Objectors in this case challenged the reasonableness" of the settlement); *Casados*, 2015 WL 11089527, at *10 ("The small number of objections and the relatively few elections to opt out of a settlement agreement may be indicative of the adequacy of the settlement." (citations omitted)); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d at 1244 ("The small number

of objectors, representing less than one-half of one-percent of the 8,000 claims received thus far, weighs in favor of the settlement.").

25.    The above-referenced factors demonstrate that the Settlement Agreement is fair, adequate, and reasonable, and should be finally approved.

## CONCLUSION

WHEREFORE, for the reasons stated above, Plaintiffs and Energen request that the Court:

(a)    determine that the settlement was made in good faith, and that its terms are fair, reasonable, and adequate;

(b)    finally approve the proposed Class Settlement;

(c)    enter a final judgment and order of dismissal with prejudice in the form submitted with this Joint Motion;[1] and

(d)    order any further relief deemed just by the Court.

---

[1]    The proposed Order Granting Final Approval to Class Settlement Agreement and Final Judgment submitted with this Joint Motion references and approves Class Counsel's requests for attorneys' fees and expenses, and incentive awards to Class Representatives.  Energen takes no position on these requests.

Dated: July 20, 2020

*s/ George A. Barton*
George A. Barton
Stacy Burrows
Law Offices of George A. Barton, P.C.
7227 Metcalf Ave. Suite 301
Overland Park, KS 66204
gab@georgebartonlaw.com
stacy@georgebartonlaw.com

**Attorneys for Plaintiff Gerald Ulibarri,
Brenda Atencio, and the Class**

Respectfully submitted,

*s/ Bradford C. Berge*
Bradford C. Berge
Holland & Hart LLP
P.O. Box 2208
Santa Fe, NM 87504-2208
Phone:  (505) 954-7284
bberge@hollandhart.com

Christopher A. Chrisman
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
P.O. Box 8749
Denver, CO 80201-8749
Phone:  (303) 295-8000
cachrisman@hollandhart.com

**Attorneys for Defendant
Energen Resources Corporation**